48699. BITUMINOUS CASUALTY COMPANY et al. v. RENFROE.

CLARK, Judge. In this appeal stemming from an award by the Workmen's Compensation Board the insurance carrier for the employer contended there was no coverage. Bituminous Casualty Co. contends it had effectively canceled its policy prior to July 22, 1971, the date on which Jerry Renfroe, an employee of Charles Schaar trading as Charles Schaar Waterproofing Co., sustained a compensable accident which caused his death.

The insurer's contention is based upon the mailing of a cancellation notice in compliance with the requirements of Code Ann. § 56-2430. The evidence presented by it included the testimony of its employee that he personally mailed a notice of cancellation at the Briarcliff Branch of the Atlanta Post Office on June 17, 1971.

Although this letter was certified it was not accompanied by a "return receipt requested" form. Our statute does not impose the requirement that such notice be other than "dispatched by at least first class mail to the last address of record of the insured and receiving therefor the receipt provided by the United States Post Office Department." Such Post Office receipt of mailing was introduced verifying that a certified letter was mailed to Charles R. Schaar Waterproofing Co., P. O. Box 418, Union City, Georgia, 30291. This address was the same shown on the face of the insurance policy. Another company employee testified she had personally prepared this cancellation notice. She also testified she had typed the form known as "B" which Workmen's Compensation rule No. 5 requires for its files upon cancellation of workmen's compensation policies. This too purportedly was mailed to the state board.

In support of its position another company's agent testified Charles Schaar had applied to him for workmen's compensation insurance on July 27, 1971, which was five days after the accident. This agent testified Schaar had said the only insurance he had was with another company for automobile and home

insurance. Although the testimony was objected to as being irrelevant since it occurred after the date of the accident, insurer contends it to be relevant and material in that it served to impeach Schaar's testimony who had sworn that he had never received the cancellation notice and that he only purchased new insurance after he found out his old insurance had been canceled.

Schaar not only denied receiving the cancellation notice, but testified that the only Post Office Box he had was numbered 482. Supportive of his testimony was that of the Postmistress of the Union City Post Office. She said she had held her position in that Post Office since May of 1970, that she personally knew Charles Schaar and that if a letter had been mailed to him at P. O. Box 418, Union City, Georgia, it would have been delivered to him even though this differed from his correct box number of 482. She further testified that she maintained a list of all certified mail "regardless whether it's marked Return Receipt Requested or not." (R. 133).

The records of the state board showed that a coverage card (Form A) required by its rule No. 3 had been on file showing the Bituminous Casualty Co. was the insurer for Charles Schaar Waterproofing Co. for successive twelve-months periods from April 21, 1969, including the date of the accident. The board's records also showed that the cancellation notice (Form B) required to be filed by it under its rule No. 5 had an effective cancellation date of June 28, 1971, but this was not received by the board until December 8, 1971. In the deputy director's award the comment was made that "The overwhelming evidence in this case shows that it is no mere coincidence that neither Charles Schaar nor Charles Schaar Waterproofing Co. nor the State Board of Workmen's Compensation has received the notice of cancellation." (T. 126).

The deputy director's finding of fact stated "that although the Code Section and the contract of the insurance carrier may require only that notice of cancellation be deposited in the mail, the rules of the Board which were introduced into evidence and are taken notice of by the hearing director show as a matter of fact that Rule 5, the reference to cancellation of insurance that 'If the issue is raised, the insurance carrier will be required to furnish satisfactory proof of the date of service of the cancellation shall be ten days after the notice was served upon the employer.' I find as a matter of fact that the insurance carrier in this case has not shown to the satisfaction of the board by the evidence that notice

of cancellation was given to the employer in this case and that the insurance policy was in full force and effect on July 22, 1971." (T. 126). Accordingly, an award was made to the defendant minor child of deceased employee.

An appeal was taken to the full board with a majority affirming the award. The minority commissioner concurred in part and dissented in part. (R. 166, 167). He stated his dissent was based on the view that the policy had been effectively canceled but further stated that "I am not too sure but what the employer got actual notice of the cancellation, but assuming that he did not, the requirements of law affecting cancellation was [sic] met by the insurer. . . The insurer proved posting and a receipt for such posting of cancellation notice in the U. S. Mail as provided by the terms of the contract of insurance and by Code § 56-2430." (R. 167).

Thereafter the employer appealed to the superior court which affirmed the award. This appeal followed.

1. What is required of the insurer in order to effect a cancellation by mail[1] of an insurance policy under the terms of Code Ann. § 56-2430? These statutory requirements are: (1) The policy must by its terms and conditions provide for cancellation; (2) a Post Office receipt must be obtained (*Ga. Farm Bureau Mutual Ins. Co. v. Gordon,* 126 Ga. App. 215 (190 SE2d 447)); (3) it must be "dispatched by at least first class mail to the last address of record of the insured"; and (4) the evidence adduced must show the mailed envelope contained the statutuory cancellation notice (*Allstate Ins. Co. v. Cody,* 123 Ga. App. 265 (180 SE2d 596)).

It should be noted there is no requirement that the mailing should be either certified or registered and there is nothing in the statute with reference to "return receipt requested."

It should also be noted there is no requirement that it be shown that the insured actually received the notice. Prior to the enactment in 1968 of this statutory provision in our Insurance Code dealing with cancellation the Supreme Court held in *Genone v. Citizens Ins. Co.,* 207 Ga. 83, 87 (60 SE2d 125) that when the provisions of a policy permitted cancellation by mailing, then "the method prescribed in the policy provides a reasonable way to terminate the policy, and that it was unnecessary for the

---

[1]Our statute also provides cancellation may be accomplished by delivery in person to the insured of the requisite notice.

insurers, in proving notice of cancellation to show, in addition to proof of mailing the written notice in the manner provided in the policy, that the insured actually received the notice." After enactment of the statute our court recognized in *Ga. Mutual Ins. Co. v. Ragan,* 122 Ga. App. 56, 58 (176 SE2d 230) that the statute made no change in this general proposition of law.

What happens then, when, as here, the insured contends that he never received the notice and supports such denial by evidence from the postmistress? The answer is found in *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376 (100 SE2d 142) and *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597 (117 SE2d 239). Both of these cases point out that evidence a letter was never received is admissible as a circumstance to show it was never mailed. Both of these cases are cited in Powell v. Lititz Mutual Ins. Co., 419 F2d 62, in which that tribunal noted the absence of any decision from the Georgia courts following the passage of our statute codified as § 56-2430 requiring it "to make an Eriemandated guess as to what the Georgia courts would hold if the question was before them." Our reply conforms with the reasoning by the federal court, as we hold that introduction of evidence that the cancellation notice was never received raises an issue of fact as to whether the notice was or was not mailed.

The result of compliance with these codal requirements does create a presumption of receipt in conformance with the general rule that "Evidence showing that a letter was written, properly addressed, stamped with sufficient postage, and deposited in the United States mail gives rise to the presumption of receipt of the letter by the addressee." Green, Ga. Law of Evidence, § 50, p. 139. But "the presumption arising that it was received by the addressee is merely prima facie, and may be successfully rebutted by uncontradicted evidence of the addressee that he did not in fact receive it." *Rowntree Bros. v. Bush,* 28 Ga. App. 376 (2) (111 SE 217); *Roland v. Shelton,* 106 Ga. App. 581, 585 (127 SE2d 497).

Determination of the conflict between the versions of the sender and the addressee is for the fact finding body, whether it be a jury in law cases or an administrative agency in administrative matters. As was said in *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597, 601, supra: "Evidence that the insured received no notice has, in this jurisdiction, been held proper for consideration of the jury as to whether or not the notice was mailed." As to workmen's compensation matters, the weight and credit to be accorded the conflicting testimony is for

determination by the State Board of Workmen's Compensation. *American Mut. Liab. Ins. Co. v. Brackin,* 68 Ga. App. 256 (1) (23 SE 505); *Phoenix Ins. Co. v. Weaver,* 124 Ga. App. 423 (183 SE2d 920).

2. Ordinarily, the foregoing conclusion would be sufficient for determination of this appeal because an award by the Workmen's Compensation Board is presumed to have been supported by every fact essential to make it valid. *Brown Transport Corp. v. Jenkins,* 129 Ga. App. 457 (1) (199 SE2d 910). In the instant case, however, the insurer argues that the language of the award shows it to be based solely and specifically upon Rule 5: "I find as a matter of fact that the insurance carrier in this case has not shown to the satisfaction of the board by the evidence that notice of cancellation was given to the employer in this case." Rule 5 deals with the procedure for cancellation of insurance and provides that if an issue of notice of cancellation arises that "the insurance carrier will be required to furnish satisfactory proof of the date of service of notice of cancellation upon the employer."

As to the finding of fact thus stated, there is sufficient testimony in the record to satisfy the "any evidence" rule. "Under numerous decisions of this court, an award of the Workmen's Compensation Board will not be disturbed where there is any evidence to support it." *Wilson v. Aragon Mills,* 110 Ga. App. 392, 393 (138 SE2d 596). "The courts on appeal are bound by the findings of the Board of Workmen's Compensation if supported by any evidence. [Cits.]" *Fox v. Liberty Mutual Ins. Co.,* 125 Ga. App. 285, 288 (187 SE2d 305). But insurer attacks the legality of Rule 5.

3. This attack upon Rule 5 is that it is invalid because (1) it is an unconstitutional exercise of legislative powers by an administrative body in violation of Art. III, Sec. I, Par. I (Code Ann. § 2-1301) which vests the legislative powers in the General Assembly; and (2) it is in excess of the rule-making power conferred upon the Workmen's Compensation Board by the Workmen's Compensation Act.

Although there is no express provision in the workmen's compensation statutes codified as Title 114 relative to cancellation of an insurance policy there are numerous provisions therein dealing with workmen's compensation insurance. For example, Code Ann. Ch. 114-6 is captioned "Insurance" and deals exclusively with that subject.

A reading of our Workmen's Compensation Act shows that a large portion thereof deals with workmen's compensation insurance. Certainly, it is obvious that one of the goals of the statute is to provide insurance coverage or its financial equivalent by self-insurers for protection in the event an employer became insolvent. We must also recognize that the purpose of workmen's compensation insurance differs from general liability insurance because it is not intended to benefit the employer who pays the premiums but is to pay compensation to the injured employee. All payments thereunder are made directly to the employee so in effect the employee is the actual individual insured.

With the General Assembly having given such extensive control to the Workmen's Compensation Board over workmen's compensation insurance it is obvious that Rule 5 is not violative of the constitutional prohibition vesting legislative powers when the board provides an administrative requirement dealing with cancellation of insurance policies. Most important, this directive enables the board to make certain it is informed of the termination of coverage for employees who possess no knowledge of the name of the insurance carrier until an injury or death occurs.

Furthermore, the statute itself declares that "The State Board of Workmen's Compensation may make rules, not inconsistent with this Title, for carrying out the provisions of this Title." Code Ann. § 114-703 (a). The provisions of Rule 5 comply with this declaration by the General Assembly.

4. There is no conflict between the provisions of Code Ann. § 56-2430 and Rule 5 as to the provision in the latter that upon an issue arising as to receipt of notice that the insurance carrier is required to furnish proof to the satisfaction of the State Board of Workmen's Compensation. This does not create any greater duty of proof than exists without it under general insurance law. As we pointed out in Division 1 of this opinion, questions of fact are for determination by the fact-finding tribunal. Rule 5 does not in any respect conflict with the statutory method provided by the express language of Code Ann. § 56-2430. The remaining provisions of Rule 5 designate administrative procedures which are within the board's rule-making powers.

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED OCTOBER 4, 1973 — DECIDED JANUARY 24, 1974.

*Van Gerpen & Bovis, John M. Bovis, William M. Schiller,* for appellants.

*Savell, Williams, Cox & Angel, John M. Williams, Elmer L. Nash,* for appellee.