## 50027. HARRIS et al. v. UNITED STATES FIDELITY & GUARANTY COMPANY.

PANNELL, Presiding Judge.

This is an appeal from the grant of a motion for summary judgment in favor of an insurer and against the Harrises (husband and wife) and the Joneses (husband and wife, the wife being the named insured) in a joint action upon an automobile policy, insuring against public liability and collision; the Harrises seeking recovery upon judgments obtained against the Joneses to the extent of the insurance coverage under the policy, plus attorney fees on account of bad faith in refusing to pay said judgments and by the Joneses to recover for damages to their automobile under the collision provisions of the policy, and for damages and attorney fees expended by them in defending the action against them, because of the failure of the insurer to defend.

The insurer contends, (1) that it gave a notice of cancellation of the policy by mail in compliance with Code § 56-2430, which effectively canceled the policy before the collision of the judgment holders and the insureds; and, (2) the statute of limitation had run on any action on the policy because a prior action, brought within time, had been dismissed for lack of a written order therein for a period of five years, and could not be rebrought under Code § 3-808. The insureds and the judgment holders contend that evidence by the named insured, Mrs. Jones, that she did not receive the notice of cancellation made a question for decision by a jury as to whether the notice was actually *mailed,* even though the evidence be uncontradicted otherwise that the notice was placed in an envelope, properly stamped and addressed as required by the terms of the policy and Code § 56-2430, and a receipt of mailing given therefor by the

U. S. Post Office. *Held:*

1. The collision occurred on May 17, 1964. The judgment against the insureds was obtained November 16, 1965, giving rise to a cause of action upon the policy of automobile liability insurance in favor of the judgment holders. A complaint on the policy was brought on May 15, 1968, within the statutory period of limitation of six years claimed by the insurer to apply to the present case. On May 15, 1973, this complaint was automatically dismissed for lack of any written order in the case for a period of five years (under either section 40(e) of the Civil Practice Act (Ga. L. 1966, pp. 609, 653; Code Ann. 81A § 140(e)), or under the Act of 1967, (Ga. L. 1967, pp. 557, 558; Code Ann. § 3-512) see *Fulton County v. Church of Latter Day Saints,* 133 Ga. App. 847 (212 SE2d 451)). After dismissal the complaint was rebrought and the costs paid under Code § 3-808 on November 14, 1973, which is within the required six months period. The refiling of the complaint was permissible under the facts here and the running of the statute of limitation continued to be tolled. *Bowman v. Ware,* 133 Ga. App. 799 (213 SE2d 58). It is unfortunate that we did not, in the *Bowman* case, make any mention of *Dollar v. Webb,* 132 Ga. App. 811 (209 SE2d 253), as this case is now relied upon by the insurer as holding contrary to the above ruling. While it was held in the *Dollar* case that after the automatic dismissal "determined the time of death" of the first case by drawing an erroneous analogy to a dismissal under demurrer under our old practice which *could* have been a dismissal on the merits or not on the merits, the facts of that case further disclose, and the decision is actually based thereon, that *more than 6 months had elapsed* between the automatic dismissal in that case and the rebringing of the complaint, which resulted in no tolling of the statute of limitation during this six month's period, allowed by Code § 3-808, so that the period of the limitation thus ended prior to the rebringing of the complaint. The descriptive term "death" in the *Dollar* case referred only to the "death" of the pendency of the prior complaint, not the "death" of the cause of action. In our opinion, neither of the 5-year statutes cited above are statutes of limitation as to the cause of action or the right

to rebring a dismissed complaint. See, *City of Chamblee v. Village of North Atlanta,* 217 Ga. 517, 522 (3, b) (123 SE2d 633). See, *Allstate Ins. Co. v. Dobbs,* 134 Ga. App. 225.

2.  Where, as in the present case, the deposition of the insurance agent who issued the policy was such as to authorize, if not demand, a finding the premium due on March 2, 1964 (a statement of which was mailed to the named insured with the policy, in the amount of $43.10) was paid to the insurer by the agent prior to the mailing of a notice of cancellation for nonpayment of premiums and no further premium was due until June 2, 1964, a jury upon a trial would be authorized to find that the insurer was not authorized to cancel the policy for nonpayment of premiums at the time the notice of cancellation was mailed to the insured (*Canal Ins. Co. v. Lawson,* 123 Ga. App. 376 (1), 181 SE2d 91) and that the policy remained in force until the next payment on the premium was due June 2, 1964, and was in force at the time of the automobile collision on May 17, 1964, out of which the present action on the policy ultimately arises.

3. Because this case is being reversed and the evidence as to receipt of the premium payment by the insurer may be different upon the trial (if records are introduced) and not depend solely on the testimony of the issuing agent, and because there is a seeming conflict of decisions on the matter by this court, we deem it advisable to review the question of whether evidence of lack of receipt of the notice mailed is evidence that it was not mailed, where the mailing is shown by *direct testimony* thereof and by *direct testimony,* it is shown the official Post Office receipt tendered in evidence was given therefor.

First, let us examine the language of the policy and statute. The policy reads: "This policy may be cancelled by the Company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by

such insured or by the Company shall be equivalent to mailing." The provisions of the policy comport with the provisions of the Code § 56-2430, which, so far as this question is concerned, has not been materially changed since its adoption in 1960 (Ga. L. 1960, pp. 289, 671), as Code § 56-2430. That Section reads in part as follows: "Cancellation of policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein: Written notice, stating the time when the cancellation will be effective, but not less than five days from date of notice, or such other specific longer period as may be provided in the contract or by statute, may be delivered in person, or by depositing such notice in the United States mails to be dispatched by at least first class mail to the last address of record of the insured and receiving therefore the receipt provided by the United States Post Office Department." Cancellation is thus accomplished in two ways, (1) by mailing the notice of cancellation in the manner described and receiving a Post Office receipt for that mailing; or (2) by delivery in person to the insured. If the cancellation is attempted by mailing the notice, the *mailing* constitutes notice to the insured of the cancellation at the time prescribed in the notice, and the subsequent failure of the Post Office to deliver the notice has no effect on the cancellation and the insurer is not required to prove actual receipt of the notice by the insured. This is also true under the provisions of the policy here which conforms to the statute. See, *St. Paul Fire &c. Co. v. C. I. T. Corp.,* 55 Ga. App. 101 (189 SE 390); *Genone v. Citizens Ins. Co.,* 207 Ga. 83 (60 SE2d 125); *Davis v. Travelers Indemnity Co.,* 94 Ga. App. 102 (93 SE2d 810); *Queen Ins. Co. of America v. Nalley Discount Co.,* 215 Ga. 837 (114 SE2d 21); *Allstate Ins. Co. v. Cody,* 123 Ga. App. 265 (180 SE2d 596); *Ga. Farm Bureau Mut. Ins. Co. v. Gordon,* 126 Ga. App. 215 (190 SE2d 447); *Garner v. Government Employees Ins. Co.,* 129 Ga. App. 235 (199 SE2d 350); *Bituminous Cas. Co. v. Renfroe,* 130 Ga. App. 621 (204 SE2d 317).

It is our opinion, therefore, that the statute and the terms of the policy make the *receipt* of the Post Office Department conclusive proof of *the mailing* when by direct testimony it is identified as the receipt given for

that particular mailing containing the notice of cancellation. Since the statute in effect says that *mailing* is delivery of the notice to the insured, it has the same effect as actual delivery to the insured. It follows that such proof of mailing by the directly identified Post Office receipt is proof of delivery, and proof of actual delivery is not necessary. In other words, proof of the subsequent failure of the Post Office Department to deliver the mails is not proof of nondelivery of the notice as delivery was legally effected by the *act of mailing* and *securing the Post Office receipt*. This is somewhat analogous to the law of sales; delivery to the carrier is delivery to the buyer. That the carrier does not make delivery is insufficient to raise an issue that delivery was not made to the carrier, which has been proved by a receipt of the carrier showing delivery, where delivery to the carrier is not otherwise assailed. Evidence by those concerned with the delivering of the mail to the Post Office and by those concerned with giving and receiving the receipt therefor that an error or mistake had been made and that the notice was never delivered to the Post Office would no doubt create such an issue, but we have no such evidence here.

The decision of this court in *Davis v. Travelers Indem. Co.*, 94 Ga. App. 102 (93 SE2d 810) sustains our construction of the statute and the policy provisions here. This case was decided prior to the enactment of Code § 56-2430, but concerned the question of proof of mailing and evidence of mailing of a notice of cancellation, the mailing of which under the terms of the policy would constitute notice. The securing of a Post Office receipt was not required under the terms of the policy. The evidence in that case was as follows: "B. Clifford Conner testified in part: that he had received no notice that the policy had been canceled and had no knowledge of the fact until he made demand upon the insurance company for payment of damages arising out of the collision with the plaintiff; that he had received no bills from Jack May at any time; that he called Jack May and told him about there being two policies on the same automobile and that May told him not to worry, that he would straighten it out for him; and that when he paid the premiums on December 2, 1952, May told him he had paid his back payments in full.

P. H. Speer testified in part: that he was employed by Travelers Indemnity Company and part of his job was to issue and mail cancellations on insurance policies; that on October 14, 1952, he executed the cancellations on policies held by Ralph and Clifford Conner; that he mailed these cancellations to 798 Park Street, S. W., Atlanta, which was the address shown in the policies; and that the cancellations took effect ten days after the time of mailing."

In that case, as in this case, there was direct testimony of the mailing of a notice (and in the present case direct testimony of the mailing of the notice and of the securing of the Post Office receipt for such mail.) If testimony of the insured that he never received the notice did not make an issue as to the mailing in the *Davis* case, it can make no issue here.

The court in the *Davis* case construed this evidence as being undisputed that the notice was mailed to the address of the insured as stated in the policy when it ruled: "In order to prove cancellation of the policy it was unnecessary for the garnishee to prove that the insured actually received the written notice, where it is undisputed that the notice was mailed to the address of the insured as stated in the policy. *Genone v. Citizens Ins. Co.,* 207 Ga. 83 (2) (60 SE2d 125)." The *Davis* case has not been overruled. However, subsequent decisions of this court, under the facts of those cases held testimony that the insured did not receive a mailed notice of cancellation makes an issue for a jury consideration as to whether the notice was actually mailed. These cases are *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376 (100 SE2d 142), which is cited for a similar statement in *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597 (117 SE2d 239), and both of these cases are similarly cited in *Bituminous Cas. Co. v. Renfroe,* 130 Ga. App. 621, supra, and *Barber v. American Mut. Fire Ins. Co.,* 131 Ga. App. 366, 367 (206 SE2d 86), in which latter case the writer of this opinion concurred. An examination of the facts and testimony in those cases will disclose that those cases are not controlling here basically because either there was error in the name and address or there was no *direct testimony* of mailing or no *direct testimony* that the Post Office receipt was given for the

envelope containing the notice.

In *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376, supra, the evidence as to the mailing of the notice consisted of testimony of an employee of the insurer that ". . . she fills out the cancellation part of the notice with the amount due, date of handling and cancellation date; she carries the original of the notice to the mail room together with a 'P. O. R. S. list' containing the names and addresses of the persons for whom the notices have been prepared which is run at the same time the cancellation notices are run (apparently on the addressograph machine). She checks the notices against the list to see that they conform; a mail clerk then places the notices in window envelopes and again checks them with the list, placing the envelopes in the order in which the name appears on the list; at 4 p.m. daily the prepared list and envelopes are taken to the 10th Street Post Office, Station 'C' where they are again checked by a postal clerk; the 'P.O.R.S. list' is stamped with the date, station, and amount of postage (3c for each name on the list) and the copy is returned to the insurance company, which, along with copy of the cancellation notice, is placed in its files." The policy contained a provision as follows: "Allstate may cancel this policy by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

The list testified about also constituted the Post Office receipt for the mailing. This list and Post Office receipt was tendered in evidence and the trial judge refused to admit it and then directed a verdict for the insured. The insurance company appealed and this court reversed, holding that the document was admissible as a business record under the Business Records Act, Ga. L. 1952, p. 177; (Code Ann. § 38-711), the court commenting thereon as follows: "When in evidence, the weight and credit to be given to it, including the circumstances surrounding the making of the record and the lack of personal knowledge on the part of the persons responsible therefor, are matters for the consideration of the jury.

Should the jury find from this and other evidence that the defendant had carried the burden of proving that it actually did mail to the named insured, at the address stated on the insurance policy, a written notice of cancellation to be effective not less than ten days thereafter, then, under this provision of the insurance policy above quoted, the jury would find that the cancellation became effective regardless of whether or not the notice was actually received by the insured, for the reason that such a provision in a contract is lawful and must be given effect according to its terms. *Genone v. Citizens Ins. Co.,* 207 Ga. 83 (60 SE2d 125). However, direct evidence that a letter was never received is also admissible as a circumstance to show that it was never mailed. Should these circumstances pointing in opposite direction be in evidence, the question of whether or not the letter of cancellation was mailed is one for determination by the jury. It was accordingly error to refuse to admit the documentary evidence."

No authority was cited for the gratuitous ruling that evidence the letter was never received was a circumstance pointing in the opposite direction of the documents. We say gratuitous because it will be noted that the documents with the evidence identifying them was not sufficient to demand a finding of mailing even in the absence of any evidence of lack of receipt of the notice by the insured. In the case now before this court, exactly the contrary is true.

In *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597 (2), supra, there were ambiguities in the notice. The insured was named John David Russell. This court held: "A jury question was raised as to whether or not the notice of cancellation was properly mailed within the strict terms of the insurance contract. An employee of the insurance company testified that she prepared the cancellation notice to the insured as she customarily prepared others. The defendant introduced in evidence a Post Office receipt showing that an envelope addressed to 'John Davis Russell,' Route 3, Thomson, Georgia, was mailed.

"The employee testified that this envelope contained a notice of cancellation to the insured. There is no conclusive evidence that the notice was or was not

returned to the insurance company as undelivered mail. The two names do not sound enough alike phonetically to come within the doctrine of idem sonans. It will be noticed that the name of this particular addressee is important for the proper delivery of the mail. While it is not essential that the notice of cancellation be received by the insured to effectuate a cancellation, it is mandatory that the notice be properly addressed and mailed to bring about a cancellation. A correctly addressed notice of cancellation, suffice it to say, is of the utmost importance to the insured, and he has a right to a strict compliance with the policy provisions. Testimony was adduced at the trial on behalf of the plaintiff that the notice was never received by the plaintiff. The evidence by the plaintiff of the nonreceipt of the notice was admissible as a circumstance as to whether the alleged notice had been properly addressed or mailed. Employers Liab. Assur. Corp. v. Maes, 235 F.2d 918, supra; *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376, supra. The jury resolved the question in favor of the insured, and, as this court does not determine the weight of the evidence but only the sufficiency, we find no reversible error. See *Whitten v. State,* 47 Ga. 297." It appears, therefore, that in the *New Amsterdam Cas. Co. v..Russell* case an entirely different question was there involved, a difference in a name, which cast doubt upon whether a proper notice had been mailed. Further, there was no direct testimony of mailing of the notice, and no direct testimony that the Post Office receipt was for the mailing of the envelope containing the notice if such an envelope was prepared. There was direct testimony as to both in the present case.

In *Barber v. American Mut. Fire Ins. Co.,* 131 Ga. App. 366 (206 SE2d 86) this court, citing *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376, 379, supra, and *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597, 600, supra, stated that the failure to receive a notice of cancellation "was sufficient as a circumstance for the jury to consider as to whether the notice was even mailed," further stating "But here these presumptions are not all-important because the insurer does not even contend it gave notice as required by the two statutes and by the contract of insurance, but elected to rely upon a different method of cancellation, to wit, that the attorney in fact had notified

the insurer to cancel the policy." (Attorney in fact for the insured). This case is therefore no authority to the contrary of what we here rule.

Where there is uncontradicted direct proof of a proper mailing, and uncontradicted and direct proof that the Post Office receipt introduced in evidence was taken for such mailing, which mailing according to the statute and to the insurance contract constitutes *delivery* to the insured, and then to hold that the failure of insured's agent (the Post Office Department) to deliver his mail to him is evidence which contradicts the prior proof of mailing (by evidence not circumstantial in nature) would in effect require what the contract and the statute do not require; that is, actual receipt of the mail by the insured before a cancellation of the policy could occur. This would in effect nullify the statute and the provisions of the policy which permit a notice *and delivery* thereof by *mailing* rather than *personal delivery* to the insured.

*Judgment reversed. Quillian and Clark, JJ., concur.*

ARGUED JANUARY 9, 1975 — DECIDED MAY 9, 1975.

W. L. *Spearman, Duane Bryan Jackson, Scott Walters,* for appellants.

W. *Colquitt Carter,* for appellee.