**Randolph Lee SMITH, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. C83–742A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 8, 1983.

Edwin M. Saginar, Atlanta, Ga., for plaintiff.

Michael J. Gorby, Fain, Gorby, Reeves & Moraitakis, P.C., Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

The present case arises from defendant Allstate Insurance Company's denial of coverage to plaintiff for the destruction of plaintiff's automobile. The case is before the court on defendant's motion for summary judgment. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. For the reasons stated herein defendant's motion is DENIED.

### FACTS

Allstate Insurance Co. ("Allstate") issued a policy of automobile insurance to plaintiff, Randolph Lee Smith, in May 1982. This was a one year policy and premiums were to be paid in three installments. Plaintiff made an initial payment of $291. Plaintiff's next installment was due on August 20, 1982. The parties are not in dispute as to the fact that plaintiff did not make this payment by August 20, 1982.

On September 8, 1982, Allstate prepared a notice advising plaintiff that unless he paid the total past due amount of $330.90, by September 22, 1982, his policy would be cancelled. On September 9, 1982, defendant mailed this notice to plaintiff's last known address. Allstate did not receive a premium from plaintiff by September 22, 1982.

On October 5, 1982, Allstate received and processed a check from plaintiff for $330.90. Allstate deposited this check in its bank; a subsequent computer check revealed that the policy for which this premium was submitted had been terminated two weeks earlier for non-payment. According to Allstate, it issued a refund check for this amount on October 7, 1982. Defendant alleges that this check was sent to plaintiff's agent, Art Waller, not to plaintiff. Plaintiff contends that Allstate retained this premium and did not issue a refund check until December 1982.

In December 1982 the plaintiff was involved in an automobile accident and contacted his agent, Mr. Waller, to report the accident. Allstate denied coverage and, according to plaintiff, tendered a refund check of $330.90 to plaintiff. Plaintiff claims to have rejected this tender.

Defendant has now moved for summary judgment on the grounds that plaintiff had no policy of insurance in force at the time of the accident. Further facts will be disclosed as necessary for the discussion of this motion.

### DISCUSSION

In support of its motion for summary judgment defendant makes two arguments: (1) that the plaintiff's insurance policy was cancelled as of September 22, 1982, for non-payment of premium and (2) that no after-the-fact events operated to create any additional policy or to reinstate the cancelled one.

■ We first consider argument number 1—was the policy cancelled as of September 9, 1982? The cancellation of automo-

bile insurance policies is governed by Ga. Off'l Code Ann. §§ 33–24–44 and 33–24–45 (1982). These two statutes provide strict guidelines with which an insurer must comply in order to cancel an automobile insurance policy. The purpose of these sections is to provide an insured with notice as to the status of his/her policy.[1] Compliance with the statutes requires that, for cancellation for non-payment, an insurer mail,[2] to the insured's last known address, a notice of cancellation not less than 10 days prior to the date of cancellation. A receipt from the United States Postal Service is considered evidence of this mailing.

■ In this case Allstate complied with these requirements. Allstate sent the notice to plaintiff's last known address, 3237 Strawberry Lane, Decatur, Georgia 30034. This notice was mailed on September 9, 1982 and indicated that the policy would be cancelled on September 22, 1982. This satisfies the required 10 day notice. As required by the statutes, Allstate received, from the post office, a receipt for the mailing. Defendant's Exhibit C[3] to Brewer's affidavit is a copy of the "PORS List" prepared by Allstate.[4] Such lists have specifically been recognized by the Georgia Appellate Court as constituting the required post office receipt. *Hill v. Allstate Ins. Co.*, 151 Ga.App. 542, 260 S.E.2d 370 (1979). Defendant's "PORS List" indicates that it is a record of the mailing of cancellation notices. In addition defendant submits a copy of the cancellation notice (defendant's Exhibit B to Brewer's affidavit).

■ This court holds that such evidence establishes compliance with the statutory requirements for cancellation. Plaintiff's claim that he did not receive the notice is irrelevant where there is no evidence to contradict the fact that the requirements have been satisfied. *Hill v. Allstate Ins. Co., supra.* Defendant complied with the statutory requirements for cancellation; plaintiff did not submit his premium by September 22, 1982, as required by the defendant. This court holds that the plaintiff's policy of automobile insurance with the defendant was cancelled as of September 22, 1982.

■ Plaintiff asserts that even if the policy was cancelled defendant's subsequent acts resulted in a reinstatement of the policy. Specifically, plaintiff alleges that he submitted his premium to defendant, admittedly late, and that defendant did not return this premium to plaintiff. Plaintiff contends that his premium constituted an offer to Allstate to reinsure him and that by retaining the check Allstate accepted this offer.[5]

Allstate admits that it received a check from plaintiff, for the amount due, on October 5, 1982. According to Allstate, however, it retained the check only until a computer check indicated that plaintiff's policy had been cancelled as of September 22, 1982. Allstate alleges that on October 7, 1982, after learning of the cancellation, it issued a refund check for the amount received from plaintiff. This check, Allstate contends, was mailed to plaintiff's agent, Art Waller, because of a company policy to return money due to an insured who is an assigned risk to the producing agent.

---

1. These statutes only provide a minimum standard; the parties may contract for stricter standards. In this case, however, Allstate's policy provides for a cancellation method identical to the statutes'.

2. The statutes also provide for delivery in person.

3. The correct "Exhibit C" is contained in Defendant's Amendment to Affidavit of William E. Brewer.

4. A "PORS List" is a computer compilation prepared in insurer's ordinary course of business containing the names, addresses, and policy numbers of all those policyholders whose policies are to be cancelled by mail.

5. Plaintiff contends that Ga. Off'l Code Ann. § 33–24–45(f) is applicable to negate the cancellation. Plaintiff's reliance on this section is misplaced. § 33–24–45(e) and (f) must, as defendant points out, be read together. The two sections deal specifically with automatic renewals and the exclusions thereto. The sections have no applicability to the case at bar.

Plaintiff alleges that he never received a refund of his premium. In addition plaintiff introduces the deposition of Art Waller who also testifies that he never received such a refund on plaintiff's behalf.

On this motion for summary judgment the party seeking summary judgment, defendant, bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. For the reasons hereinafter stated, defendant's motion for summary judgment is DENIED.

Allstate contends that there is no issue of fact as to whether a reinstatement occurred. According to Allstate whether plaintiff received the refund check is immaterial to the question of whether a contract of insurance existed. "In order for a contract to have arisen, Allstate would have had to have *accepted* this offer." (Allstate's Brief in Support of Motion for Summary Judgment, p. 6) (emphasis added).

This court agrees with Allstate the issue is whether Allstate accepted the offer by plaintiff. This court does not agree, however, that the only way Allstate could have accepted was by issuing a policy showing time out of force, by sending a new declaration sheet to plaintiff or by sending something to plaintiff to indicate an acceptance. (Allstate Brief, p. 6). Accepting a premium from plaintiff is sufficient to preclude Allstate from asserting a breach of which it had knowledge at the time of acceptance. *See Kelley v. Carolina Life Ins. Co.*, 48 Ga.App. 106, 171 S.E. 847 (1933). This is true because by accepting the premium the company impliedly recognizes the continued binding effect of the policy.

The question, then, is whether Allstate *accepted* the premium. As to this question there is an issue of fact. Allstate has presented some evidence that it issued the refund check, namely the affidavit of William E. Brewer, a Unit Manager for Defendant, to that effect. In addition, defendant presents a copy of a letter dated October 7, 1982, to Art Waller. This letter allegedly accompanied the check. Clearly this evidence does not establish, beyond a doubt, that Allstate did issue the refund. Plaintiff has presented evidence of non-receipt, i.e., the affidavit of Art Waller and of plaintiff, each testifying to that fact. Evidence that a letter was not received does raise an issue as to whether the letter was mailed. *Allstate Ins. Co. v. Buck*, 96 Ga. App. 376, 100 S.E.2d 142 (1957). This is especially true in a case such as this where there is no post office receipt for the letter and no cancelled check.

If, as plaintiff alleges, Allstate retained the check until after plaintiff's accident in December 1982 defendant may be deemed to have "accepted" the premium.

In this case a jury must determine whether Allstate accepted the premium. Summary judgment is, therefore, DENIED.